# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICHAEL ALLEN SOTO, <br><br> Plaintiff, <br><br> v. <br><br> GARDENA POLICE DEPARTMENT et al., <br><br> Defendant. | Case No. 2:21-cv-00583-RSWL (MAA) <br><br> **MEMORANDUM DECISION AND ORDER DISMISSING COMPLAINT WITH LEAVE TO AMEND** |

## I. INTRODUCTION

On January 20, 2021, Plaintiff Michael Allen Soto ("Plaintiff"), who at that time was being held at Los Angeles County Jail, filed a *pro se* Complaint alleging violations of his civil rights pursuant to 42 U.S.C. § 1983 ("Section 1983"). (Compl., ECF No. 1.) On February 23, 2021, the Court denied Plaintiff's initial Request to Proceed Without Prepayment of Filing Fees. (ECF Nos. 2, 5.) On April 5, 2021, Plaintiff provided notice of his change of address to a location outside of jail. (ECF No. 6.) On April 22, 2021, Plaintiff submitted an amended Request to Proceed Without Prepayment of Filing Fees (ECF No. 8), which the Court granted on April 27, 2021 (ECF No. 9).

The Court has screened the Complaint, and dismisses it with leave to amend for the reasons stated below. No later than June 9 2021, Plaintiff must either: (1) file a First Amended Complaint; or (2) advise the Court that Plaintiff no longer intends to pursue this lawsuit.

## II. PLAINTIFF'S ALLEGATIONS AND CLAIMS[1]

The Complaint is filed against: (1) Gardena Police Department; (2) Los Angeles County Jail;[2] (3) John Doe[3] #1–10, Gardena Police Department patrol officers, in their individual and official capacities; and (4) John Doe #11, Los Angeles County I.R.C. intake nurse (medical), in his or her individual and official capacity (each, a "Defendant," and collectively, "Defendants"). (Compl. 1, 3–6.)[4]

On September 1, 2020, at around 2000 hours, officers tried to arrest Plaintiff. (*Id.* at 7.) Plaintiff was afraid and suffers from PTSD, so ran for safety. (*Id.*) John Doe #1–2 pulled out clubs and attacked Plaintiff's knees while John Doe #3 attacked Plaintiff with his fists and John Doe #4 attempted to shoot Plaintiff with a

///

---

[1] The Court summarizes Plaintiff's allegations and claims in the Complaint and attached exhibits, without opining on their veracity or making any findings of fact. *See Durning v. First Boston Corp.*, 815 F.2d 1265, 1267 (9th Cir. 1987) (explaining that documents attached to a complaint are part of the complaint and may be considered in determining whether the plaintiff can prove any set of facts in support of the claim).

[2] Gardena Police Department and Los Angeles County Jail are named as Defendants in the caption of the Complaint (*see* Compl. 1), but not listed among the parties in the body of the Complaint (*see id.* at 3–6). If Plaintiff files an amended complaint, he must ensure consistency between the Defendants listed in the caption and named as parties in the body of the complaint.

[3] Doe is misspelled as "Dough" in the Complaint.

[4] Citations to pages in docketed documents reference those generated by CM/ECF.

2

taser. (*Id.*) Plaintiff continued running for safety. (*Id.*) John Doe #4 further reloaded or John Doe #5 deployed a second taser. (*Id.*)

Plaintiff "gave up chase," threw his hands in the air, got on the ground, and put his hands behind his back. (*Id.*) John Doe #1 put his knee on the back of Plaintiff's neck and pushed Plaintiff's hands upwards until they caused a thirty percent possible fracture to his right hand. (*Id.*) John Doe #2–6 pulled out tasers and continued to tase Plaintiff while John Doe #7–8 attacked Plaintiff and said "stop resisting." (*Id.*)

On September 2, 2020, at or around 0300 hours, John Doe #9 woke Plaintiff up and told him he was taking Plaintiff to the hospital. (*Id.* at 8.) At Gardena Memorial Hospital, Plaintiff complained of pain in his hands and knees. (*Id.*) The doctor ordered x-rays on Plaintiff's right hand, issued him a splint, and prescribed Plaintiff pain medicine and anti-inflammatory in it. (*Id.*) The nurse came to put the splint on Plaintiff. (*Id.*) John Doe #9 denied Plaintiff the split and said "we will put it on at the station." (*Id.*) John Doe #10 did not object. (*Id.*) The nurse gave Plaintiff his pain medicine, and John Doe #9–10 took Plaintiff back. (*Id.*)

On September 3, 2020, Plaintiff came to Los Angeles County Jail and was processed through I.R.C. (*Id.*) When Plaintiff arrived at medical intake, John Doe #11 asked Plaintiff about the x-rays in his file from Gardena Memorial Hospital. (*Id.*) Plaintiff said that officers John Doe #9–10 denied him the splint that the doctor ordered for his right hand. (*Id.*) John Doe #11 did not follow up on it, and only focused on Plaintiff's left hand which had an open wound with an infection, and did not follow up on it either. (*Id.*)

Plaintiff asserts violations of the Eighth Amendment for excessive force and deliberate indifference to medical care. (*Id.* at 7–8.) Plaintiff seeks declaratory relief; compensatory, punitive, and special damages; costs and attorneys' fees; and an evidentiary hearing. (*Id.* at 9.)

///

## III. LEGAL STANDARD

Federal courts must conduct a preliminary screening of any case in which a plaintiff proceeds *in forma pauperis*. 28 U.S.C. § 1915(e)(2)(B). The court must identify cognizable claims and dismiss any complaint, or any portion thereof, that is: (1) frivolous or malicious, (2) fails to state a claim upon which relief may be granted, or (3) seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2)(B).

When screening a complaint to determine whether it fails to state a claim upon which relief can be granted, courts apply the Federal Rule of Civil Procedure 12(b)(6) ("Rule 12(b)(6)") standard. *See Watison v. Carter*, 668 F.3d 1108, 1112 (9th Cir. 2012). To survive a Rule 12(b)(6) dismissal, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. Although "detailed factual allegations" are not required, "an unadorned, the-defendant-unlawfully-harmed-me accusation"; "labels and conclusions"; "naked assertion[s] devoid of further factual enhancement"; and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements" do not suffice. *Id*. "Dismissal under Rule 12(b)(6) is appropriate only where the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory." *Hartmann v. Cal. Dep't of Corr. & Rehab.*, 707 F.3d 1114, 1122 (9th Cir. 2013) (quoting *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008)).

In reviewing a Rule 12(b)(6) motion to dismiss, courts will accept factual allegations as true and view them in the light most favorable to the plaintiff. *Park v. Thompson*, 851 F.3d 910, 918 (9th Cir. 2017). Moreover, where a plaintiff is

appearing *pro se*, particularly in civil rights cases, courts construe pleadings liberally and afford the plaintiff any benefit of the doubt. *Wilhelm v. Rotman*, 680 F.3d 1113, 1121 (9th Cir. 2012). "If there are two alternative explanations, one advanced by defendant and the other advanced by plaintiff, both of which are plausible, plaintiff's complaint survives a motion to dismiss under Rule 12(b)(6)." *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011). However, the liberal pleading standard "applies only to a plaintiff's factual allegations." *Neitzke v. Williams,* 490 U.S. 319, 330 n.9 (1989), *superseded by statute on other grounds*, 28 U.S.C. § 1915. Courts will not "accept any unreasonable inferences or assume the truth of legal conclusions cast in the form of factual allegations." *Ileto v. Glock Inc.,* 349 F.3d 1191, 1200 (9th Cir. 2003). In giving liberal interpretations to complaints, courts "may not supply essential elements of the claim that were not initially pled." *Chapman v. Pier 1 Imps. (U.S.), Inc.*, 631 F.3d 939, 954 (9th Cir. 2011) (quoting *Pena v. Gardner*, 976 F.2d 469, 471 (9th Cir. 1992)).

## IV. DISCUSSION

### A. Section 1983

Section 1983 provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . ., subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law . . . .

42 U.S.C. § 1983. "Section 1983 does not create any substantive rights, but is instead a vehicle by which plaintiffs can bring federal constitutional and statutory challenges to actions by state and local officials." *Anderson v. Warner*, 451 F.3d 1063, 1067 (9th Cir. 2006). "The purpose of §1983 is to deter state actors from using the badge of their authority to deprive individuals of their federally

5

guaranteed rights and to provide relief to victims if such deterrence fails." *Wyatt v. Cole*, 504 U.S. 158, 161 (1992). "To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988).

Plaintiff asserts violations of the Eighth Amendment for excessive force and deliberate indifference to medical care. (Compl. 7–8.) However, the Eighth Amendment applies only to convicted prisoners, and Plaintiff sues for violations during his arrest and days following his arrest. *See Castro v. County of Los Angeles*, 833 F.3d 1060, 1067–68 (9th Cir. 2016) (en banc) ("Inmates who sue prison officials for injuries suffered while in custody may do so under the Eighth Amendment's Cruel and Unusual Punishment Clause or, if not yet convicted, under the Fourteenth Amendment's Due Process Clause"); *Smith v. City of Hemet*, 394 F.3d 689, 700 (9th Cir. 2005) ("All claims that law enforcement officers have used excessive force —deadly or otherwise—in the course of an arrest must be analyzed under the Fourth Amendment and its 'reasonableness' standard."). Mindful of the liberal pleading standards afforded *pro se* civil rights plaintiffs, the Court examines Plaintiff's excessive force claim pursuant to the Fourth Amendment, and Plaintiff's inadequate medical care claim pursuant to the Fourteenth Amendment. *See Sagana v. Tenorio*, 384 F.3d 731, 736–37 (9th Cir. 2004) ("A party need not plead specific legal theories in the complaint, so long as the other side receives notice as to what is at issue in the case."); *Ellis v. Brady*, Case No. 16cv1419 WQH (NLS), 2017 U.S. Dist. LEXIS 203458, at *15–16 (S.D. Cal. Dec. 8, 2017) (concluding that court could address plaintiff's claim asserted under the wrong constitutional amendment, as "it is the factual allegations, not the legal labels attached, which determine the issue").

///

///

## B. Entity Defendants and Official Capacity Claims

A suit against a defendant in his or her individual capacity "seek[s] to impose personal liability upon a government official for actions he takes under color of state law . . . . Official-capacity suits, in contrast, 'generally represent only another way of pleading an action against an entity of which an officer is an agent.'" *Kentucky v. Graham*, 473 U.S. 159, 165 (1985) (quoting *Monell v. Dep't of Social Servs.*, 436 U.S. 658, 690 n.55 (1978)). "[A]n official-capacity suit is, in all respects other than name, to be treated as a suit against the entity." *Id.* at 166.

The Complaint is filed against the Gardena Police Department and ten of its patrol officers in their official capacities (John Doe #1–10), as well as Los Angeles County Jail and one of its intake nurses in their official capacity (John Doe #11). (Compl. 1, 3–6.) As Gardena Police Department is a named Defendant, the claims against John Doe #1–10 in their official capacities are redundant and should be omitted from any amended complaint. *See Ctr. for Bio-Ethical Reform, Inc. v. L.A. Cnty. Sheriff Dep't*, 533 F.3d 780, 799 (9th Cir. 2008) (holding that sheriff was a "redundant defendant" in lawsuit against county and county sheriff in his official capacity). Similarly, as Los Angeles County Jail is a named Defendant, the official capacity claim against John Doe #11 is redundant and should be omitted from any amended complaint. *See id*.

"A municipality or other local government may be liable under [Section 1983] if the governmental body itself 'subjects' a person to a deprivation of rights or 'causes' a person 'to be subjected' to such deprivation." *Connick v. Thompson*, 563 U.S. 51, 60 (2011) (citing *Monell*, 436 U.S. at 692). "A municipality cannot be held liable *solely* because it employs a tortfeasor—or in other words, a municipality cannot be held liable under Section 1983 on a *respondeat superior* theory." *Monell*, 436 U.S. at 690–91. "In order to establish municipal liability, a plaintiff must show that a 'policy or custom' led to the plaintiff's injury." *Castro*, 833 F.3d at 1073 (quoting *Monell*, 436 U.S. at 694). "Official municipal policy includes the

decisions of a government's lawmakers, the acts of its policymaking officials, and practices so persistent and widespread as to practically have the force of law." *Connick*, 563 U.S. at 61. A rule or regulation "promulgated, adopted, or ratified by a local governmental entity's legislative body" constitutes a municipal policy. *Thompson v. City of Los Angeles*, 885 F.2d 1439, 1443 (9th Cir. 1989), *overruled on other grounds by Bull v. City & County of San Francisco*, 595 F.3d 964 (9th Cir. 2010) (en banc). "A policy has been defined as 'a deliberate choice to follow a course of action . . . made from among various alternatives by the official or officials responsible for establishing final policy with respect to the subject matter in question.'" *Waggy v. Spokane County Washington*, 594 F.3d 707, 713 (9th Cir. 2010) (alteration in original) (quoting *Long v. County of Los Angeles*, 442 F.3d 1178, 1185 (9th Cir. 2006)). "[I]n addition to an official policy, a municipality may be sued for constitutional deprivations visited pursuant to governmental custom even though such custom has not received formal approval through the [governmental] body's official decisionmaking channels." *Navarro v. Block*, 72 F.3d 712, 714 (9th Cir. 1996) (quotations omitted) (citing *Monell*, 436 U.S. at 690–91). However, liability for a custom will attach only if a plaintiff pleads that his or her injury resulted from a "permanent and well-settled" practice. *Thompson*, 885 F.2d at 1444. Allegations of random acts or isolated events are insufficient to establish a municipal custom. *Navarro*, 72 F.3d at 714. Furthermore, there must be a "direct causal link between a municipal policy or custom and the alleged constitutional deprivation." *City of Canton v. Harris*, 489 U.S. 378, 385 (1989). Municipal policy "'causes' an injury where it is the 'moving force' behind the constitutional violation, or where 'the [municipality] itself is the wrongdoer.'" *Chew v. Gates*, 27 F.3d 1432, 1444 (9th Cir. 1994) (citations omitted). The municipal policy "need only cause a constitutional violation; it need not be unconstitutional per se." *Jackson v. Gates*, 975 F.2d 648, 654 (9th Cir. 1992).
///

The Complaint does not identify any specific City of Gardena or Los Angeles County policy or custom that caused Plaintiff's alleged injuries. Rather, the Complaint alleges a single incident of excessive force against Plaintiff and inadequate medical care for Plaintiff's injuries resulting from such incident. (*See generally* Compl.) "A plaintiff cannot prove the existence of a municipal policy or custom based solely on the occurrence of a single incident of unconstitutional action by a non-policymaking employee." *Davis v. City of Ellensburg*, 869 F.2d 1230, 1233 (9th Cir. 1989); *see also Trevino v. Gates*, 99 F.3d 911, 918 (9th Cir. 1996) ("Liability for improper custom may not be predicated on isolated or sporadic incidents.") Instead, liability must be "founded upon practices of sufficient duration, frequency and consistency that the conduct has become a traditional method of carrying out policy." *Trevino*, 99 F.3d at 918.

For these reasons, the Complaint fails to state any Section 1983 claims against the Gardena Police Department, Los Angeles County Jail, or John Doe #1–11 in their official capacities. If Plaintiff files an amended complaint with claims against these Defendants, he must correct these deficiencies or risk their dismissal.

### C. Individual Capacity Claims

#### 1. Fourth Amendment - Excessive Force

Excessive force claims that arise in the context of an arrest or investigatory stop invoke the protections of the Fourth Amendment of the U.S. Constitution, which guarantees citizens the right "to be secure in their persons . . . against unreasonable . . . seizures." U.S. Const. amend. IV; *Graham v. Conor*, 490 U.S. 386, 394 (1989). "Under the Fourth Amendment, police may use only such force as is objectively reasonable under the circumstances." *LaLonde v. County of Riverside*, 204 F.3d 947, 959 (9th Cir. 2000). "[T]he 'reasonableness' inquiry in [a] [Fourth Amendment] excessive force case is an objective one: the question is whether the officers' actions are 'objectively reasonable' in light of the facts and

circumstances confronting them, without regard to their underlying intent or motivation." *Graham*, 490 U.S. at 397; *A.K.H. v. City of Tustin*, 837 F.3d 1005, 1010 (9th Cir. 2016). "The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation." *Graham*, 490 U.S. at 396–97. "The 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Id*. at 396.

To determine if a Fourth Amendment excessive force violation has occurred, courts "balance the extent of the intrusion on the individual's Fourth Amendment rights against the government's interests to determine whether the officer's conduct was objectively reasonable based on the totality of the circumstances." *Espinoza v. City & County of San Francisco*, 598 F.3d 528, 537 (9th Cir. 2010). This analysis involves three steps. *Id*. First, courts "assess the severity of the intrusion on the individual's Fourth Amendment rights by evaluating 'the type and amount of force inflicted.'" *Glenn v. Washington County*, 673 F.3d 864, 871 (9th Cir. 2011) (quoting *Espinoza*, 598 F.3d at 537). "[E]ven where some force is justified, the amount actually used may be excessive." *Id*. (alteration in original) (quoting *Santos v. Gates*, 287 F.3d 846, 853 (9th Cir. 2002)). Second, courts evaluate the government's interest in the use of force by assessing three primary factors: "(1) the severity of the crime; (2) whether the suspect posed an immediate threat to the officers' or public's safety; and (3) whether the suspect was resisting arrest or attempting to escape." *Espinoza*, 598 F.3d at 537; *Glenn*, 673 F.3d at 872. These factors are not exclusive; other relevant factors include the availability of less intrusive alternatives to the force employed, whether proper warnings were given, and whether it should have been apparent to officers that the individual was emotionally disturbed. *Glenn*, 673 F.3d at 872. Third, courts "balance the gravity

of the intrusion on the individual against the government's need for that intrusion." *Id.* at 871 (quoting *Miller v. Clark County*, 340 F.3d 959, 964 (9th Cir. 2003)).

The Complaint alleges that on September 1, 2020, at around 2000 hours, officers tried to arrest Plaintiff. (Compl. 7.) Plaintiff was afraid and suffers from PTSD, so ran for safety. (*Id.*) John Doe #1–2 pulled out clubs and attacked Plaintiff's knees while John Doe #3 attacked Plaintiff with his fists and John Doe #4 attempted to shoot Plaintiff with a taser. (*Id.*) Plaintiff continued running for safety. (*Id.*) John Doe #4 further reloaded or John Doe #5 deployed a second taser. (*Id.*) Plaintiff "gave up chase," threw his hands in the air, got on the ground, and put his hands behind his back. (*Id.*) John Doe #1 put his knee on the back of Plaintiff's neck and pushed Plaintiff's hands upwards until they caused a thirty percent possible fracture to his right hand. (*Id.*) John Doe #2–6 pulled out tasers and continued to tase Plaintiff while John Doe #7–8 attacked Plaintiff and said "stop resisting." (*Id.*)

These allegations are sufficient to warrant a response from John Doe #1–6 to Plaintiff's Fourth Amendment excessive force claim. They are not, however, sufficient to warrant a response from John Doe #7–8. If Plaintiff files an amended complaint with claims against these defendants, he should correct this deficiency by providing additional factual allegations, including, for example, how they "attacked" Plaintiff, the type and amount of force they used, the amount of time they subjected Plaintiff to force, and whether Plaintiff was resisting arrest, or risk their dismissal.

### 2. Fourteenth Amendment – Inadequate Medical Care

Claims for violations of the right to adequate medical care brought by pretrial detainees against individual defendants under the Fourteenth Amendment are evaluated under an objective deliberate indifference standard. *Gordon v. County of Orange*, 888 F.3d 1118, 1124–25 (9th Cir. 2018). The elements of such claim are:

11

> (i) the defendant made an intentional decision with respect to the conditions under which the plaintiff was confined; (ii) those conditions put the plaintiff at substantial risk of suffering serious harm; (iii) the defendant did not take reasonable available measures to abate that risk, even though a reasonable official in the circumstances would have appreciated the high degree of risk involved—making the consequences of the defendant's conduct obvious; and (iv) by not taking such measures, the defendant caused the plaintiff's injuries.

*Id*. at 1125. "With respect to the third element, the defendant's conduct must be objectively unreasonable, a test that will necessarily 'turn[] on the facts and circumstances of each particular case.'" *Castro*, 833 F.3d at 1071 (quoting *Kingsley v. Hendrickson*, 576 U.S. 389, 397 (2015)). "The 'mere lack of due care by a state official' does not deprive an individual of life, liberty, or property under the Fourteenth Amendment." *Gordon*, 888 F.3d at 1125 (quoting *Castro*, 833 F.3d at 1071); *Daniels v. Williams*, 474 U.S. 327, 330–31 (1986) ("[T]he Due Process Clause is simply not implicated by a *negligent* act of an official causing unintended loss of or injury to life, liberty, or property."). Thus, the plaintiff must "prove more than negligence but less than subjective intent—something akin to reckless disregard." *Castro*, 833 F.3d at 1071.

The Complaint alleges that on September 2, 2020, when the nurse came to put a splint on Plaintiff at Gardena Memorial Hospital, John Doe #9 said that they would put the splint on Plaintiff at the station, and John Doe #10 did not object. (Compl. 8.) On September 3, 2020, Plaintiff was taken to Los Angeles County Jail and processed through I.R.C., where John Doe #11 was working at medical intake. (*Id*.) John Doe #11 asked Plaintiff about the x-rays in his file from Gardena Memorial Hospital, but did not follow up when Plaintiff told him that John Doe #9–10 had denied him a splint, only focused on Plaintiff's left hand which had an open wound with an infection, and did not follow up on it either. (*Id*.)

These allegations are insufficient to state a Fourteenth Amendment inadequate medical care claim against John Doe #9–11. At most, they allege lack

12

of due care or negligence, which does not violate the Constitution. *See Gordon*, 888 F.3d at 1125; *Daniels*, 474 U.S. at 330–31.

For these reasons, the Complaint fails to state a Fourteenth Amendment inadequate medical care claim against any Defendant. If Plaintiff files an amended complaint with a Fourteenth Amendment inadequate medical care claim, he must correct these deficiencies or risk its dismissal.

## V. CONCLUSION

For the reasons stated above, the Court **DISMISSES** the Complaint **WITH LEAVE TO AMEND**. Plaintiff may have an opportunity to amend and cure the deficiencies in light of his *pro se* prisoner status. Plaintiff is **ORDERED** to, no later than June 9, 2021, either: (1) file a First Amended Complaint ("FAC"), or (2) advise the Court that Plaintiff no longer intends to pursue this lawsuit.

The FAC must cure the pleading defects discussed above and shall be complete in itself without reference to the Complaint. *See* L.R. 15-2 ("Every amended pleading filed as a matter of right or allowed by order of the Court shall be complete including exhibits. The amended pleading shall not refer to the prior, superseding pleading."). This means that Plaintiff must allege and plead any viable claims in the FAC again. Plaintiff shall not include new defendants or new allegations that are not reasonably related to the claims asserted in the Complaint.

In any amended complaint, Plaintiff should confine his allegations to those operative facts supporting each of his claims. Plaintiff is advised that pursuant to Rule 8, all that is required is a "short and plain statement of the claim showing that the pleader is entitled to relief." **Plaintiff strongly is encouraged to utilize the standard civil rights complaint form when filing any amended complaint, a copy of which is attached.** In any amended complaint, Plaintiff should identify the nature of each separate legal claim and make clear what specific factual allegations support each of his separate claims. Plaintiff strongly is encouraged to keep his

13

statements concise and to omit irrelevant details. It is not necessary for Plaintiff to cite case law, include legal argument, or attach exhibits at this stage of the litigation. Plaintiff is advised to omit any claims for which he lacks a sufficient factual basis.

**The Court cautions Plaintiff that failure to timely file a FAC will result in a recommendation that this action be dismissed for failure to prosecute and/or failure to comply with court orders pursuant to Federal Rule of Civil Procedure 41(b).**

Plaintiff is not required to file an amended complaint, especially since a complaint dismissed for failure to state a claim without leave to amend may count as a "strike" for purposes of the *in forma pauperis* statute, 28 U.S.C. § 1915(g).[5] Instead, Plaintiff may request voluntary dismissal of the action pursuant to Federal Rule of Civil Procedure 41(a) using the attached Notice of Voluntary Dismissal form.

Plaintiff is advised that the undersigned Magistrate Judge's determination herein that the allegations in the Complaint are insufficient to state a particular claim should not be seen as dispositive of the claim. Accordingly, although the undersigned Magistrate Judge believes Plaintiff has failed to plead sufficient factual matter in the pleading, accepted as true, to state a claim for relief that is plausible on its face, Plaintiff is not required to omit any claim or Defendant in order to pursue this action. However, if Plaintiff decides to pursue a claim in an amended complaint that the undersigned Magistrate Judge previously found to be insufficient, then, pursuant to 28 U.S.C. § 636, the undersigned Magistrate Judge

---

[5] Inmates who have accumulated three of more "strikes" are not permitted to bring a civil lawsuit or appeal a judgment in a civil action *in forma pauperis*—that is, without prepayment of the filing fee—unless the inmate is under imminent danger of serious physical injury. *See* 28 U.S.C. § 1915(g). Instead, inmates with three or more "strikes" generally must pay their full filing fee upfront in order to file a civil lawsuit or appeal a civil judgment.

14

ultimately may submit to the assigned District Judge a recommendation that such claim may be dismissed with prejudice for failure to state a claim, subject to Plaintiff's right at that time to file objections. *See* Fed. R. Civ. P. 72(b); C.D. Cal. L.R. 72-3.

IT IS SO ORDERED.

DATED: May 10, 2021

_____
MARIA A. AUDERO
UNITED STATES MAGISTRATE JUDGE

Attachments

Form Civil Rights Complaint (CV-66)

Form Notice of Dismissal